UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MELISSA COMPTE,     :
   Plaintiff     :
          :
 vs.        :  NO. 12-cv-2137
          :
MICHAEL J. ASTRUE,    :
Commissioner of the Social Security  :
Administration,      :
          :
   Defendant.    :

*M E M O R A N D U M*

I.   *Introduction*

   We are considering Plaintiff's appeal from the decision of the

Commissioner of Social Security denying her disability insurance benefits. Plaintiff filed

an application for benefits on March 16, 2010. (Doc. 8 at 1). A hearing was held before

an Administrative Law Judge ("ALJ") on May 5, 2011. (Doc. 7-2 at 10). On August 16,

2011, the ALJ denied Plaintiff's application. (Doc. 7-2). Plaintiff appealed this decision

to the Social Security Administration's Appeals Council on September 12, 2011, but the

Appeals Council denied the request for review. This appeal followed. For the reasons

explained below, we will affirm the ALJ's decision and deny Plaintiff's appeal.

II.   *Relevant Medical History*

   Beginning in April 2009, Plaintiff began to experience severe dizziness and

very bad headaches. (Doc. 7-2 at 13). Initially, Plaintiff was treated by a primary care

physician, Dr. Darshan Patel. (Doc. 7-3 at 12). In June 2009, Plaintiff was referred to an

ear, nose, and throat specialist, Dr. Hussain Malik, who prescribed a number of medications and a nasal spray. (Id.). In July 2009, Plaintiff saw Dr. Raj Katara, who noted that she displayed a wide-based gait, and complained of persistent dizziness. (Id.). Diagnostic testing showed no abnormalities. Plaintiff attempted physical therapy but ceased going after her symptoms worsened. By the end of 2009, Plaintiff reported to Dr. Malik that her dizziness was 60% better. (Id.). Plaintiff was prescribed a cane by her chiropractor that she routinely uses to walk.

At her hearing, Plaintiff testified that she is unable to walk without assistance and stays in bed all day. (Doc. 7-2 at 13). She has a young son but he is mostly cared for by her husband and her mother. (Id.). She testified that she does not bathe herself, cook for herself, drive herself, go shopping, or go to church. (Id. at 14).

III.        *Discussion*

        *A. Standard of Review*

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial

evidence must be upheld.  42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d

Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we

are bound by those findings, even if we would have decided the factual inquiry

differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the

Secretary must be accepted as conclusive by a reviewing court if supported by

substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v.

Apfel, 270 F.3d 171, 176 (4th Cir. 2001);  Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529

n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of

evidence, but 'rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  Pierce v. Underwood, 487 U.S. 552, 565

(1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson

v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);  Hartranft v. Apfel,

181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more

than a mere scintilla of evidence but less than a preponderance.  Brown, 845 F.2d at

1213.  In an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's

finding from being supported by substantial evidence."  Consolo v. Federal Maritime

Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

*B.  Five-Step Evaluation Process*

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence

4

(with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating claims for disability insurance benefits.  See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[1] (2) has an impairment that is severe or a combination of impairments that is severe,[2] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[3] (4) has the

---

1.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

2.  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

3.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy.  Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[4]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

### C.  The ALJ's Decision

Following a hearing in May 2011, the ALJ denied Plaintiff's request for benefits.  The reasons for this denial are explained in the ALJ's decision, handed down on August 16, 2011.  (Doc 7-3).  First, the ALJ noted that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014.  (Doc. 7-3 at 9).  Next, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 20, 2009.  (Id.)  The ALJ then determined that Plaintiff has a combination of

---

4.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

impairments that are severe, namely: vertigo, hypoglycemia, and migraines. (Id.) At the third and fourth steps of the evaluation process, the ALJ found that Plaintiff does not have a listed impairment, and that Plaintiff has the residual functional capacity to perform light work with some limitations. (Doc. 7-3 at 11). In making this decision, the ALJ reasoned that although one of Plaintiff's physicians, Dr. Hussain Malik, opined that Plaintiff was completely disabled, the rest of the medical evidence indicates that Plaintiff retains the residual capacity to do light work.

### D. The ALJ's Decision Was Supported by Substantial Evidence

On appeal, Plaintiff argues that the ALJ erred by failing to give controlling weight to Dr. Malik's opinion that Plaintiff was "completely disabled and unable to work." (Doc. 7-7 at 35). To be accorded controlling weight, a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques[,]" and must not be inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2), (3). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence," and may afford the opinion more or less weight depending on the extent to which it is supported. Plummer v. Apfel, 186 f.3d 422, 429 (3d Cir. 1999).

In this case, Dr. Malik's opinion is unsupported by medical evidence, as illustrated by at least three inconsistencies in the record. First, Dr. Malik's opinion that Plaintiff is totally disabled is inconsistent with Plaintiff's medical record as a whole. Plaintiff testified that her disability began in April 2009. (Doc. 7-2 at 13). According to

her records, at this time, Plaintiff's primary care physician was Dr. Darshan Patel. (Doc. 7-7 at 2). As the ALJ noted, other than treating the Plaintiff for vertigo and hypoglycemia, "[d]ocumented findings on physical examinations throughout 2009 are relatively benign." (Doc. 7-3 at 12). Records from Plaintiff's other physicians follow a similar trend: Plaintiff saw a neurologist in July 2009 for complaints of dizziness and headaches, but nothing in her physical examination was abnormal except for her wide-based gait. (Doc. 7-7 at 12). The neurologist ordered an MRI and a follow-up visit, but it appears that Plaintiff sought no further treatment. Plaintiff began physical therapy in July 2009, but discontinued it because she reported worsening symptoms. Diagnostic tests were inconclusive–an audiogram in July 2009 and an MRI in August 2009 were both normal. (Doc. 7-7 at 94). Last, Plaintiff visited Dr. Joel Laury in September 2010 for chronic sinusitis and allergic rhinitis, but he noted nothing extraordinary in her physical examination. (Doc. 7-7 at 111-12). In sum, while the records show that Plaintiff has suffered with dizziness, vertigo, and headaches, none of Plaintiff's treating physicians' records support Dr. Malik's assessment of Plaintiff's *degree* of incapacity.

Second, as noted by the Government, Dr. Malik's medical source statement is internally inconsistent. (Doc. 9 at 20). While concluding that Plaintiff is totally disabled, Dr. Malik simultaneously indicated that she can occasionally lift and carry up to 100 pounds. (Doc. 7-7 at 35). Moreover, four months prior to writing the medical source statement, Dr. Malik noted during an office visit that Plaintiff reported her dizziness was 60% better. (Doc. 7-7 at 38).

Third, both of the state agency medical consultants who reviewed Plaintiff's claim opined that she retained the residual functional capacity for light work with some limitations. (Doc. 7-7 at 29-34, 60-66). As the ALJ noted, the most recent evaluation was conducted by Dr. Jan Kapcala, in May 2010. Dr. Kapcala's assessment considered the opinion of Dr. Malik when determining that Plaintiff had the residual capacity to do some light work. Dr. Kapcala concluded that Plaintiff could occasionally lift or carry up to 20 pounds, and could stand or walk at least two hours in a normal eight hour work day. (Doc. 7-7 at 61). We agree with the ALJ that "[t]hese opinions are generally consistent with the great weight of the evidence," and therefore, should be accorded more weight than Dr. Malik's. (Doc. 7-3 at 13)

After reviewing the record, we find that the ALJ appropriately weighted Dr. Malik's opinion, and that no error was committed. Dr. Malik's opinion went against the majority of the medical evidence in the record. Moreover, Dr. Malik's conclusion that Plaintiff is completely disabled and unable to work is not "entitled to controlling weight or given special significance" because it is an opinion on a non-medical issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d).

IV.     Conclusion

For the reasons stated above, we find that the ALJ's decision is supported by substantial evidence. Plaintiff's appeal is denied. We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

9